**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| JAHI M. SHAKUR, : | |
| : Petitioner, : | Civil No. 06-2669 (FSH) |
| v. : | |
| : | **O P I N I O N** |
| RONALD H. CATHEL, et al., : | |
| : Respondents. : | |

**APPEARANCES:**

    JAHI M. SHAKUR, Petitioner <u>Pro</u> <u>Se</u>
    # 75005
    Northern State Prison
    P.O. Box 2300
    Newark, New Jersey 07114

**FAITH S. HOCHBERG, District Judge**

    This matter is before the Court on petitioner JAHI M. SHAKUR's (hereinafter "Petitioner") application for habeas corpus relief under 28 U.S.C. § 2254 (hereinafter "Petition").[1] For the reasons stated below, the petition for habeas relief will be denied for failure to make a showing of a federal deprivation.

---

[1] This matter comes before the Court on the Order issued by the United States Court of Appeals for the Third Circuit (1) denying Petitioner leave to file a successive § 2254 petition on the ground that the issues raised in the instant application were not treated on merits in Petitioner's previous applications; and (2) transferring Petitioner's application to this Court to be treated as a § 2254 petition. See <u>Shakur v. Cathel</u>, 06-2669, Docket Entry No. 2.

Petitioner, currently in custody at the Northern State Prison in Newark, New Jersey, pursuant to a state court judgment of conviction, began serving his thirty-year sentence on January 19, 1984; and there is no dispute as to whether the sentence imposed upon Petitioner was "without the possibility of parole on the felony-murder conviction."  Pet. at 47 (reproducing Shakur v. new Jersey Dep't of Corrections, A-4964-03T5 at 2 (N.J. Super. Ct.  App. Div. 2005)).

Petitioner, however, challenges computation of his prison sentence on the grounds that the law affecting that computation violates Ex Post Facto Clauses of the United States Constitution, as well as Petitioner's Due Process and Equal Protection rights.

Specifically, Petitioner contends that,

> in violation of Petitioner's . . . constitutional rights, . . . the New Jersey legislature and the state judicial branch has declared Petitioner's sentence a mandatory minimum sentence and retroactively cancelled commutation and work credits.

Pet. at 6.

While Petitioner's application elaborates on the aforesaid statement so extensively as to exceed one hundred pages, Petitioner's plenteous and frequently convoluted argument raises nothing but a state law issue and could be reduced to a contention that, for the purposes of calculating Petitioner's sentence, (1) the term "mandatory minimum sentence" should equal to thirty years minus commutation and work credits, and (2)

pertinent state court decisions and legislative provisions clarifying that commutation and work credits should not be applied to prisoners sentenced in the same fashion as Petitioner should be ignored as unconstitutional.  See generally, Pet.

**DISCUSSION**

**A.   Background**

Petitioner concedes that "[P]etitioner was sentenced to 30 years parole ineligibility . . . after having been convicted of felony[-]murder pursuant to N.J.S.A. 2C:11-3a(3)."  Pet. at 71. Petitioner, however, believes that, pursuant to N.J.S.A. 30:4-140 and N.J.S.A. 30:123.51, Petitioner should be awarded 3,835 days of commutation credits, plus 1,235 days of work credits, and that these credits should have been used to reduced Petitioner's sentence (or, with respect to work credits, paid for in cash). See id.  Believing that he is entitled to "over 15 years that [are] to be remitted from his sentence," Petitioner claims that these 15 years of credit were illegality denied to him "because of later interpretations of his sentence."  Id. at 71-72. Petitioner asserts that, "[a]t the time of [P]etitioner's sentence, the statutes were in place to automatically award . . . commutation credits, [and that is why] Petitioner has [a vested right to] 3,835 days [of] commutation credits, and over 1,325 days of earned work credits."  Id. at 72.  Petitioner further maintains that, when he "was sentenced in 1984, [the applicable]

3

statute did not say a person would be ineligible to be awarded commutation credits or earned credits.  The specific language . . . deny[ing] those credits did not come until [the state courts and the] Legislative Amendments to the statute in 1997 and 2000, which[,] . . . being applied to [Petitioner] retroactively, in an ex post facto way," unduly "redefined" the term "ineligible for parole" into the term "mandatory minimum sentence."  Id.

**B.   Petitioner's Ex Post Facto Claim**

Since the Ex Post Facto Clause of the U.S. Constitution bars only those "enactments, which by retroactive operation, increase the punishment for a crime after its commission," Garner v. Jones, 529 U.S. 244, 249-50 (2000) (citations omitted), if there was no right to commutation or work credits for offenders like Petitioner when Petitioner was convicted in 1984, no *clarification* of this fact could possibly strip Petitioner from the right that Petitioner did not have in the first place.

Since there is no federal right to commutation credits, see Wolff v. McDonnell, 418 U.S. 539, 557 (1974), the awarding of credits is a creation of the New Jersey Legislature; and such awards  were coined in order to provide incentive for inmates to behave in a productive, non-disruptive manner.  Cf. Lipschitz v. State, 129 A.2d 310 (N.J. Super. Ct. App. Div. 1957).  Although N.J.S.A. 30:4-140 and 30:4-92 permit inmates to accrue credits for continuous good behavior and productive work while in prison

4

that may reduce their sentences, such credits can not be applied to reduce mandatory minimum sentences.  See N.J.S.A. 30:4-123.51.

This statute, N.J.S.A. 30:4-123.51, is a part of the Parole Act of 1979, N.J.S.A. 30:4-123.45 to .69, and was fully in effect and applicable in 1984, at the time Petitioner was convicted and sentenced; the statutory language--while expressly coined in terms of "mandatory minimum" sentences--did not clarify what terms could or could not be classified as a "mandatory minimum." The State's Supreme Court, however, found that, pursuant to the Parole Act of 1979, the "mandatory minimum" term was *always* used as simply another name for, and interchangeable with, a "parole ineligibility" term.  See Merola, 667 A.2d 702, 705 (N.J. App. Div. 1995), certif. denied, 526 A.2d 168 (1996) ("[t]he language of N.J.S.A. 2C:11-3(b) is plain and requires no interpretation. A convicted murderer not sentenced to death must be sentenced to either thirty years of imprisonment or a term of incarceration between thirty years and life.  In either instance, however, the murderer is not eligible for release from prison prior to thirty years of incarceration").  While Petitioner asserts that Merola created a "new" law, nothing in the language of the Merola decision indicates any creation of "new law" or any other form of undue judicial activism; conversely, the entire opinion expressly focuses on *clarification* of the statutory language and analyses the intent of the original statutory language and the policy

underlying the statutory interpretations.  See Merola, 667 A.2d at 705.  The mere fact that Petitioner is displeased with the *clarification* provided by the state court in Merola, same as Petitioner's preference for fathoming an ambiguity where there was none, neither renders the original statutory language ambiguous nor indicates a constitutional violation on the part of the state courts with respect to Petitioner.

In fact, in rejecting Petitioner's ex post facto claim, the Appellate Division unambiguously stated that the pre-Merola and post-Merola readings of the state statute by the state court were identical, right from the time of the statutory enactment.  See Shakur v. New Jersey Dep't of Corrections, A-4964-0375, at 2-5 (Jan. 24, 2005).

> Merola did not retroactively inflict any greater punishment upon [Petitioner] than what he was subject to at the time of sentencing.  Merola [merely] stands for the proposition that [Petitioner] was not entitled to . . . credits at the time when he was sentenced for murder in 1984 pursuant to N.J.S.A. 2C:11-3b. If [Petitioner's] term of imprisonment was longer than the mandatory minimum of thirty years, then any additional time could be shortened by the application of the earned credits. [But,] since [Petitioner's] release is the date of the expiration of his mandatory minimum term, [commutation and work] credits are [irrelevant] to him.

Id.

This Court, being a federal body, holds no mandate to second-guess the state court interpretation of the state statute.  Petitioner's reliance on the fact that Merola opinion came about

6

after the statute was enacted is misplaced: indeed, it would be anomalous for this Court to declare a statutory ambiguity and to find that a state court's decision automatically altered the statutory meaning simply because the state court was called to enter an opinion about the statutory language after the statute was enacted, since *all* court opinions about statutory language matters come, by definition, after enactments of the relevant statutes.[2]  See Merola, 285 N.J. Super. at 509 (noting that the

---

[2]

Petitioner's claim with respect to the alleged "alterations" of the original statutory language by either 1997 or 2000 amendments is equally erroneous, since the amendments were either irrelevant to Petitioner's case or do not change the result. (Petitioner alleges that the amendments "rubber stamped" the state court's holding in Merola, the case decided in 1995, into a statutory provision through the mode of the 1997 and 2000 amendments. Petitioner does not clarify why the 2000 amendment was necessary to "rubber stamp" Merola holding into a statute if, as Petitioner alleges, the 1997 amendment had already done so.)

The 1997 amendment to N.J.S.A. § 2C:11-3 provided that, if a convict was sentenced to life imprisonment without parole, such convict should not have been entitled to commutation and work credits towards the convict's sentence. See P.L.2000, Ch. 88, reprinted in, 2000 N.J. Laws 88. The reason why the 1997 amendment's clarifying language with respect to commutation and work credits was needed and, hence, included in the amendment, was that there could be no "mandatory minimum" in a life sentence and, therefore, the provisions of N.J.S.A. 30:4-123.51, which prohibited commutation credits towards a mandatory minimum term, would have not applied. See id. However, the 1997 amendment to the Criminal Code had no bearing on Petitioner's case, because Petitioner was not sentenced to life imprisonment.

As to the 2000 amendment to § 2C:11-3, the amendment deleted the statement that "[t]he defendant shall not be entitled to a deduction of commutation and work credits from that sentence" just to substitute it with "with respect to a sentence imposed pursuant to this subsection, the defendant shall not be entitled to a deduction of commutation and work credits from that sentence." (An additional substantive provision was entered between the deleted text and the new text.) Hence, for Petitioner's purposes, the 2000

State Legislature had "enacted unambiguous statutes prohibiting the reduction of mandatory minimum sentences through the application of commutation and work credits," and referring to both N.J.S.A. 30:4-123.51 and N.J.S.A. 2C:11-3b, which imposes a 30-year mandatory minimum sentence on non-capital murders). Therefore, the Court finds that denial of commutation and work credits to Petitioner for the purposes of sentence reduction was not a violation of the Ex Post Facto Clause.[3]

**C.  Petitioner's Due Process and Equal Protection Claims**

Petitioner also asserts that denial of commutation and work credits violates Petitioner's rights under the Due Process and Equal Protection Clauses.  See Pet. at 80-82.  Petitioner, however, does not have a constitutionally protected liberty interest in reducing his mandatory minimum sentence under the Due Process Clause of the United States Constitution.  See Merola, 285 N.J. Super. at 512-514 (relying on Wolff v. McDonnell, 418

---

amendment does not change the result of the analysis at hand.

[3] Petitioner, in alternative, seeks monetary compensation for the work credits Petitioner has accumulated.  This Court, however, is not reaching the merits of this claim since an action for monetary damages is not cognizable under 28 U.S.C. § 2254.  See Preiser v. Rodriguez, 411 U.S. 475, 495 (1973) ("In the case of a damages claim, habeas corpus is not an appropriate or available federal remedy"); Daley v. Fed. Bureau of Prisons, 157 Fed. Appx. 520 (2005) (where a habeas petition does not challenge a conviction or sentence imposed by a district court or by any state court in the district, it does not implicate the district court's habeas jurisdiction).

U.S. at 557) Furthermore, there is no federal constitutional right guaranteeing a prisoner the right to work during his incarceration.  See Johnson v. Fauver, 559 F. Supp. 1287, 1290 (D.N.J. 1983).  Where an inmate has no federal constitutional right to receive commutation and work credits, correspondingly, he has no right to apply such credits "in contravention of a state statute requiring that an inmate serve a mandatory minimum term."  Merola, 285 N.J. Super. at 513.

   Finally, the Court also rejects Petitioner's equal protection claim.  Since both the language and the application of the challenged statutes indicates that the classification was not suspect, the State need show only a rational basis for its classification, and the requirement appears to be easily satisfied with respect to the challenged statutes.  See id. at 514 ("Clearly, a rational basis exists for distinguishing between inmates based on the severity of the crimes committed").  Since the restricting statutes were rationally related to a legitimate government interest, Petitioner's equal protection rights were not violated. Id. at 514-15.

9

**CERTIFICATE OF APPEALABILITY**

The Court next must determine whether a certificate of appealability should issue.  See Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by Petitioner demonstrates that he failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

**CONCLUSION**

Since the State's refusal to apply commutation and work credits to reduce Petitioner's mandatory prison term does not violate Petitioner's rights under the Ex Post Facto, Due Process or Equal Protection Clauses, this Court denies Petitioner's Petition on the merits.

A certificate of appealability will not issue.

An appropriate Order accompanies this Opinion.

/s/ Faith S. Hochberg
**United States District Judge**

Dated:  July 12, 2006

10